UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROY J. BUCKNER,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>　　　　　　　Defendant. | Case No. 3:22-CV-00479-LRH-CLB<br><br>**ORDER DENYING MOTION TO EXCLUDE IMPROPERLY OBTAINED PHOTOGRAPHS AND FOR MONETARY SANCTIONS**<br><br>[ECF No. 42] |

This case involves an action filed by Plaintiff Roy J. Buckner ("Buckner") against Defendant Union Pacific Railroad Co. ("Union Pacific"). Currently pending before the Court is Union Pacific's motion to exclude improperly obtained photographs and for monetary sanctions. (ECF No. 42.) Buckner responded, (ECF No. 46), and Union Pacific replied. (ECF No. 48.) For the reasons stated below, the Court denies Union Pacific's motion to exclude improperly obtained photographs and for monetary sanctions.

**I.　　FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On October 26, 2022, Buckner filed his complaint under the Federal Employers' Liability Act, 45 U.S.C. §§ 51, *et seq.* ("FELA") alleging that Buckner was injured while working as a switchman for Union Pacific. (ECF No. 2.) Buckner alleges he was attempting to board a moving locomotive when he slipped on debris, causing severe injuries to his left lower extremity and foot. (*Id.* at 3.) Buckner alleges that Union Pacific was negligent for, among other reasons, failing to provide clear walkways. (*Id.* at 3-4.)

On January 16, 2024, the parties conducted the deposition of Union Pacific's employee, Salvador Soriano ("Soriano"). (ECF No. 42.) During the deposition, Buckner's counsel sought to introduce and question Soriano about photographs taken by Buckner's representatives at 1490 Hymer Ave., Sparks, NV, 89431 ("1490 Hymer Ave"), which are the subject of the underlying motion. (ECF No. 44-14 at 3-4.) Union Pacific's counsel objected to the use of the photographs on the grounds that they were improperly obtained

outside the discovery process and without notice or permission from Union Pacific. (*Id.* at 3-8.) Union Pacific's counsel instructed Soriano not to answer any further questions about the photographs. (*Id.*) The parties then contacted the undersigned magistrate judge to resolve the dispute. (*Id.* at 8-9.) After discussing the issue, the undersigned magistrate judge advised, and the parties agreed, to suspend the deposition until a motion and briefing could be submitted on the issue. (*Id.*)

On January 26, 2024, Union Pacific filed their motion to exclude improperly obtained photographs and for monetary sanctions, (ECF No. 42). Union Pacific argues the Court should exercise its authority to impose appropriate limits on the discovery process and "prohibit any use of, or reference to, the improperly obtained photographs for the duration of this case." (*Id.* at 2.) Union Pacific argues that the law firm representing Buckner in this case, Hildebrand McLeod & Nelson LLP ("Hildebrand"), "has a documented history of unauthorized entries onto railroad property, presumably with the aim of gathering 'gotcha' evidence. . . [that] violates the clearly defined rules governing inspections of property for purposes of litigation." (*Id.*) Union Pacific requests the Court impose sanctions requiring Buckner's counsel to pay the reasonable expenses that Union Pacific incurred in bringing their motions in the amount of $6,313. (*Id.* at 9-10.)

On February 9, 2024, Buckner filed a response in opposition to Union Pacific's motion. (ECF No. 46.) Buckner argues his representatives did not engage in misconduct or behave improperly and did not know that the property in question belongs to Union Pacific. (*Id.*) Buckner argues it is not readily apparent that the property belongs to Union Pacific and notes many instances where the property itself is marked as belonging to Nexxt Logistics. (*Id.*) Therefore, Buckner argues it was reasonable that he did not serve a request under Federal Rule of Civil Procedure 34(a)(2) because those requests are only required to permit entry onto land "possessed or controlled by the responding party." (*Id.* (citing Fed. R. Civ. P. 34(a)(2).) Buckner also argues the Court should deny Union Pacific's motion based on the unclean hands doctrine. (*Id.*)

Union Pacific replied on February 16, 2024. (ECF No. 48.) Union Pacific argued

that regardless of who owned, operated, or occupied the property, Buckner's representatives knowingly and intentionally went onto private property for the purpose of obtaining access to Union Pacific's railyard without notice or permission from Union Pacific or its counsel. (*Id.* at 2.) Union Pacific reiterated the argument that this Court should exclude the photos based on this conduct. Union Pacific reiterates that monetary sanctions are appropriate because of the unlawful inspection of the railyard. (*Id.*)

### A.  Photographs Taken at 1490 Hymer Ave

Before proceeding to the analysis, the Court must lay out the facts relating to the taking of the photographs at 1490 Hymer Ave. In obtaining the photographs, Buckner's representatives visited 1490 Hymer Ave on two occasions. First, on July 12, 2023, Buckner's counsel, Charles S. Bracewell ("Bracewell"), visited the site with Thomas Lelevich ("Lelevich"), an investigator employed by Hildebrand. (ECF No. 46-1.) Bracewell explains in a sworn declaration that he "had previously identified 1490 Hymer Ave on Google Earth as a location adjacent to Union Pacific's Sparks railyard from which we might – depending on what type of fence material surrounded the property at 1490 Hymer Ave – be able to view the location where Mr. Buckner was injured without encroaching upon Union Pacific's property." (*Id.* at 2.) When searching the address on Google Maps, the property is listed as being occupied by "Nexxt Logistics, LLC." (*Id.*; ECF No. 64-2.)

According to their website, Nexxt Logistics is "a full-service transportation and distribution subsidiary of Nexxt Rail, LLC. We offer Rail and Truck Loading / Unloading and full Transloading services." (ECF No. 46-1 at 2; ECF No. 46-3.) The website describes the property at 1490 Hymer Ave as Nexxt Logistics' "Reno Sparks Transload Facility" and states "**Our facility** offers 14,000 square feet of under-cover Warehouse space, as well as 3.2-acres of outdoor storage on **our** Operations Yard **facility**." (*Id.* (quoting www.nexxtlogistics.com/transload.html) (emphasis original).) Bracewell also includes a photograph of the sign at the property, which says "NEXXT LOGISTICS TRANSLOAD 1490 HYMER AVE." (ECF No. 46-1 at 2; ECF No. 46-4.) Bracewell declares that when they visited the site, there were no "Private Property," "No

3

1  Trespassing," "Keep Out," or similar signs posted anywhere at the entrance to, or inside
2  of, 1490 Hymer Ave. (ECF No. 46-1 at 3.)
3        Ultimately, Bracewell declares that "[n]othing I saw online or on site at 1490 Hymer
4  Ave suggested to me that Union Pacific owned, occupied, operated, possessed, or
5  controlled the property." (*Id.* at 3.) Bracewell declares that he did not know that Union
6  Pacific claimed any ownership interest in the property at 1490 Hymer Ave until the
7  deposition of Soriano on January 16, 2024. (*Id.*) Bracewell declares that neither he nor
8  Lelevich "climbed over, under, or through the fence or gate, or otherwise set foot in Union
9  Pacific's railyard" during the July 12, 2023 visit. (*Id.*)
10        After reviewing the photos taken at the 1490 Hymer Ave, Bracewell discovered the
11  resolution was poor and requested Lelevich return to the site with a better camera. (*Id.*)
12  Lelevich did so on August 17, 2023, accompanied by Jessica L. Danielski ("Danielski"),
13  who is also counsel for Buckner. (ECF No. 46-13.) According to Danielski's sworn
14  declaration, when Danielski and Lelevich arrived at 1490 Hymer Ave, two men were
15  working in the yard who "appeared to be employees of Nexxt Logistics" and the property
16  appeared open to the public. (*Id.* at 2.) Danielski asked one of two workers, "for consent
17  to walk down to the fence/gate at the east end of the property to take photographs of
18  Union Pacific's railyard and the footing conditions through the fence." (*Id.*) The man asked
19  if the pair "were with the railroad," to which Danielski responded in the negative and
20  explained she "was a lawyer who represents a Union Pacific employee who was injured
21  by the footing conditions in the area." (*Id.* at 2-3.) The man "said [Danielski and Lelevich]
22  could enter the property and take the photographs, and he further advised [the pair] to
23  park in the parking stalls next to the warehouse building to avoid getting a nail in [their]
24  car tire." (*Id.*)
25        After parking, Danielski and Lelevich walked to the east end of the property and
26  "took photographs looking through the chain link fence at Union Pacific's railyard." (*Id.*)
27  Danielski declares that neither she nor Lelevich climbed over, under, or through the fence
28  or gate, or otherwise set foot in Union Pacific's railyard. (*Id.*) After returning to their car

and beginning to exit 1490 Hymer Ave, Danielski and Lelevich decided to stop and park again to take photographs of the Western Metals Recycling facility.[1] (*Id.*) Danielski declares that nothing she saw at 1490 Hymer Ave suggested that Union Pacific owned, occupied, operated, possessed, or controlled the property, but rather everything she saw indicated that Nexxt Logistics did. (*Id.* at 2.)

A sworn declaration from Stephanie L. Quinn ("Quinn"), counsel for Union Pacific, states that the photographs were taken in an area of Union Pacific's Sparks, Nevada property. (ECF No. 44 at 3.) Quinn explains she was made aware that the pictures were taken on Union Pacific's property by Soriano on the day of the Rule 34 site inspection and later confirmed it herself by going to the scene. (*Id.*) Union Pacific provides a true and correct copy of a Lexis search allegedly showing that the property at 1490 Hymer Ave is owned by Union Pacific. (*Id.*; ECF No. 44-11).

Quinn provides photographs of the scene which show the presence of Union Pacific property at 1490 Hymer Ave. (ECF No. 44-12.) However, where the markings on the property denoting Union Pacific ownership are readily visible in the photos, the markings themselves are faded or ripped, making it difficult to identify the Union Pacific markings at first glance. (*See id.*)

**III.    DISCUSSION**

Prior to addressing the legal issues, the Court must clarify that the issue before it is a narrow one. Specifically, the only issue the Court addresses with this motion is whether Buckner can use the photographs taken by his representatives at 1490 Hymer Ave to ask questions of Soriano during his deposition.[2]

---

[1]    Buckner alleges he was injured on Union Pacific's railyard "in the immediate vicinity of Western Metals Recycling." (ECF No. 2 at 3.)

[2]    Union Pacific has attempted to expand the purpose of the briefing of this issue beyond the use of these photographs at a deposition and invites the Court to exclude the photographs from the case entirely at this juncture. (ECF No. 42 at 9.) However, the purpose of briefing the current issue was to focus on whether the photographs can be used during the deposition -- not the use of the photographs for the remainder of the trial.

Turning to this narrow issue, "courts are invested with inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Unigard Sec. Ins. v. Lakewood Engineering & Mfg.,* 982 F.2d 363, 368 (9th Cir.1992) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, ––––, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (internal quotations and citation omitted). Courts have "broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Id.* (quoting *Campbell Indus. v. M/V Gemini,* 619 F.2d 24, 27 (9th Cir.1980).) This includes the authority to impose discovery sanctions. *In re USA Commercial Mortg. Co.*, 462 Fed.Appx. 677, 680 (9th Cir. 2011) (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 137–38, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992) and *In re Exxon Valdez*, 102 F.3d 429, 431 (9th Cir.1996). However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers,* 501 U.S. at 44 (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980)).

The court has the authority to preclude the use of tainted material to deter parties from engaging in extra-legal discovery and to prevent the judicial system from being complicit in the wrongdoing. *See Fayemi v. Hambrecht & Quist, Inc.,* 174 F.R.D. 319, 324 (S.D.N.Y.1997); *Perna v. Electronic Data Systems Corp.,* 916 F.Supp. 388, 396–98 (D.N.J.1995); *Smith v. Armour Pharmaceutical Co.,* 838 F.Supp. 1573, 1578 (S.D.Fla.1993). By contrast, where the party receiving the evidence was not involved in any wrongful conduct in securing it, and where the evidence itself is not privileged, there is no basis for requiring the return of the information obtained or prohibiting its use. *See Schlaifer Nance & Co. v. Estate of Warhol,* 742 F.Supp. 165, 166 (S.D.N.Y.1990).

As the Court must exercise its broad discretion to make discovery rulings with

---

Accordingly, the Court limits its consideration of this issue to the use of the photographs at the deposition and will also not address the allegations of wrongdoing levied by each side at the other as the information is not necessary to reach a conclusion on the issue.

restraint, the Court finds that excluding the photographs from being used during the deposition would be "conducive to the conduct of a fair and orderly trial" only if Buckner's representatives acted in bad faith when obtaining the photographs. *Unigard*, 982 F.2d at 368. For the reasons discussed below, regardless of whether 1490 Hymer Ave is owned by Union Pacific, the Court finds that Buckner's representatives possessed a good faith belief that they were lawfully present at 1490 Hymer Ave.

First, it was reasonable for Bracewell to assume 1490 Hymer Ave was not Union Pacific's property based on his internet research. Google Maps identified the property as occupied by Nexxt Logistics, whose website identifies the property as their "Reno Sparks Transload Facility." (ECF No. 46-1 at 2; ECF No. 46-2; ECF No. 46-3.) The website references the facility's "Union Pacific-serviced 4-car-capacity railroad access," which implies a distinction between Nexxt Logistics and the Union Pacific railroad. (ECF No. 46-3 at 3.) Bracewell declares that "[n]othing I saw online or on site at 1490 Hymer Ave suggested to me that Union Pacific owned, occupied, operated, possessed, or controlled the property" and he did not know that Union Pacific claimed any ownership interest in the property at 1490 Hymer Ave until the deposition of Soriano on January 16, 2024. (*Id.*) This is sufficient information to allow a good faith belief that the property did not belong to Union Pacific based on the internet research.

Next, it was also reasonable for Buckner's representatives to assume 1490 Hymer Ave was not owned by Union Pacific based on their in-person visits. Both Bracewell and Danielski declare that they did not observe any "Private Property," "No Trespassing," "Keep Out," or similar signs posted anywhere at the entrance to, or inside of, 1490 Hymer Ave. (ECF No. 46-1 at 3; ECF No. 46-13 at 2.) Signs at the property prominently showed Nexxt Logistics' name. (ECF No. 46-1 at 2; ECF No. 46-4; ECF No. 46-13 at 2.). During the second visit to 1490 Hymer Ave, interactions between Buckner's representatives and men who appeared to be working at the site support the belief that the property was not owned by Union Pacific but rather owned by Nexxt Logistics. In fact, based on Danielski's declaration, it appears Buckner's representatives were given permission to enter the

property.[3] (ECF No. 46-13 at 2-3.) This is more than sufficient to support a good faith belief that the property did not belong to Union Pacific.

The Court will now address the persuasive authority heavily relied on by Union Pacific, *Baugus v. CSX Transportation, Inc.*, 223 F.R.D. 469 (N.D. Ohio 2004), to support their position that the photographs should be excluded because they were obtained during an unauthorized inspection. (ECF No. 42 at 6-9.) In *Baugus*, the plaintiff entered what he knew to be the private property of the defendant and made a video which purported to show activities similar to those where the plaintiff was injured. *Id.* The court granted the defendant's motion in limine to exclude the video because the plaintiff "sought deliberately" to by-pass the provisions of Rule 34(a)(2). *Id.* at 471. The court reasoned that failing to exclude the video would encourage other prospective plaintiffs "to follow his lead, and go, without permission, who knows where, and expose themselves to who knows what dangers." *Id.*

The instant case is distinguishable from *Baugus* in several respects. First, the actions taken by the plaintiff in *Baugus* and Buckner's representatives in the instant case very significantly. Here, unlike *Baugus*, Buckner's representatives did not enter the railyard itself nor did they move any equipment. Based on their reasonable, although mistaken, belief that 1490 Hymer Ave was owned by Nexxt Logistics, Buckner's representatives actually attempted to avoid improper behavior by staying out of Union Pacific's railyard. Both Bracewell and Lelevich affirm that neither the attorneys nor Lelevich climbed over, under, or through the fence or gate, or otherwise set foot in Union Pacific's railyard. (ECF No. 46-1 at 3; ECF No. 46-13 at 2-3*.*) The conduct of Buckner's

---

[3] In Nevada, a civil trespass consists of an unpermitted and unprivileged entry onto the land of another. *Kim v. Wells Fargo Home Mortg. Inc.*, No. 2:10-CV-00593-GMN, 2010 WL 4683732, at *5 (D. Nev. Nov. 9, 2010) (citing *Allied Props. v. Jacobsen,* 343 P.2d 1016, 1021 (Nev.1959)). Pursuant to NRS 41.515(4), a "trespasser" means any person who enters or remains upon any premises owned, leased or occupied by another person *without the express or implied consent of the owner, lessee or occupant of the premises*. (emphasis added). Therefore, because an occupant of the premises gave permission for Danielski and Lelevich to park and take photographs on the property, it seems that Buckner's representatives cannot be labeled as "trespassers" during the second visit.

representatives further shows that they were not intentionally trying to circumvent the rules of discovery but rather were trying in good faith to gather evidence which could assist their client.

Additionally, Buckner's representatives tried to find an area to take photographs of the railyard without having to enter onto property possessed or controlled by Union Pacific, rather than seeking to deliberately by-pass the provisions of Rule 34(a)(2). The provisions of Rule 34(a)(2) do not mandate that the only photographs of property possessed or controlled by an opposing party may be taken at an inspection pursuant to the rule. Rather, the rule merely permits entry so that the requesting party may photograph the property. Fed. R. Civ. P. 34(a)(2). The rule does not bar a party from standing in a public area and taking photographs of areas of private property that is otherwise in plain view. As Buckner's representatives possessed the good faith belief that they were not on Union Pacific's property, and therefore were not required to comply with the provisions of Rule 34(a)(2), there is no evidence that they sought to deliberately by-pass the rule. Thus, the concerns prompting the outcome in *Baugus* are not present in this case.

As Buckner's representatives appeared to have acted in good faith when entering 1490 Hymer Ave to take photographs, the Court declines to exercise its authority to exclude the use of the photographs at the deposition of Soriano. The Court finds that this is an instance where the Court should decline to exercise its inherent powers because the use of the photographs in the deposition would not be detrimental to the conduct of a fair and orderly trial. *Chambers,* 501 U.S. at 44 ("Because of their very potency, inherent powers must be exercised with restraint and discretion.") (citation omitted). Consequently, there are no grounds upon which to issue monetary sanctions against Buckner and Union Pacific's motion is denied in its entirety.

///

///

///

## II. CONCLUSION

**IT IS THEREFORE ORDERED** that Union Pacific's motion to exclude improperly obtained photographs and for monetary sanctions, (ECF No. 42), is **DENIED**.

**IT IS SO ORDERED.**

DATED: March 4, 2024.

_____
**UNITED STATES MAGISTRATE JUDGE**