UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RORY J. BUCKNER,

                      Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY,

                      Defendant.

Case No. 3:22-cv-00479-MMD-CLB

ORDER

## I.    SUMMARY

Plaintiff Rory J. Buckner sued his employer, Union Pacific Railroad Company, under the Federal Employers' Liability Act, 45 U.S.C. §§ 51, et seq. ("FELA"), for damages resulting from a Lisfranc injury he sustained while working as a switchman in Defendant's railroad yard. (ECF No. 2.) Before the Court is Defendant's motion for summary judgment (ECF No. 76 ("Motion[1]")), along with two motions to exclude testimony of Plaintiff's experts, Alan Pagels and Brandon L. Ogden. (ECF Nos. 77, 81 (collectively, "Motions to Exclude[2]").) As explained below, the Court will deny Defendant's Motion. The Court will also deny the Motions to Exclude.

## II.    BACKGROUND[3]

On the evening of November 3, 2019, Plaintiff suffered a severe foot injury while working as a switchman, or trainman, in Defendant's rail yard in Sparks, Nevada. (ECF Nos. 2 at 2; 76-1 at 8.) Plaintiff and his colleague, Jake Schulthies, were remotely[4] moving

---

[1]Plaintiff responded (ECF No. 91) and Defendant replied (ECF No. 96).

[2]Plaintiff responded (ECF No. 90) and Defendant replied (ECF No. 94).

[3]The following facts are undisputed unless otherwise noted.

[4]Plaintiff and Schulthies were moving railcars without locomotive engineers by operating wearable remote control boxes. (ECF Nos. 76-1 at 7; 91 at 3-4.)

a cut of railcars on the PFE track. (ECF No. 76-1 at 7.) The PFE track is in Defendant's Sparks yard and is used to build trains with cars collected from different industries. (*Id.*) On the night of Plaintiff's injury, Plaintiff was servicing Western Metals Recycling, a scrap metal facility. (*Id.*)

Schulties operated the locomotive using a remote control, and Plaintiff would board the locomotive which was moving at four miles per hour or less to disable the Positive Stop Protection so that the locomotive and railcars could depart. (ECF Nos. 2 at 3; 76-1 at 7.) Around 7:20 p.m., while boarding a moving locomotive, Plaintiff placed his right foot on the first step of the locomotive to pull himself up when his left foot stepped on something on the ground. (ECF Nos. 2 at 3; 76-1 at 8.) He was able to pull himself up fully on the locomotive steps, but immediately felt pain in his left foot when he put it down on the step. (ECF No. 76-1 at 8.) Plaintiff did not see what he stepped on, but he believed that he stepped on a railroad spike because of how it felt under his foot. (ECF Nos. 76-1 at 8; 91 at 5.) Plaintiff called Schulthies over the radio for help and was unable to continue working. (ECF No. 91 at 5.) He reported the injury to the local manager, John McCafferty. (*Id.*) He was diagnosed with a Lisfranc injury and Complex Regional Pain Syndrome that have required extensive medical treatment, including five surgeries. (*Id.*)

Plaintiff filed his complaint on October 26, 2022, alleging a single cause of action under FELA. (ECF No. 2.)

## III.    DISCUSSION

### A.    Motion for Summary Judgment

Defendant argues that it is entitled to summary judgment as to Plaintiff's FELA claim because Plaintiff cannot produce competent, admissible evidence that Defendant acted negligently or that its negligence contributed to Plaintiff's injury. (ECF No. 76-1 at 5.) As an initial matter, Plaintiff has advanced one claim and multiple theories of negligence (ECF No. 2 at 3-4), and only one of Plaintiff's theories requires sufficient

2

1  evidence to survive summary judgment. The Court addresses each of Defendant's

2  arguments as to Plaintiff's theories below.[5]

3      FELA provides that a common carrier engaged in interstate commerce is "liable in

4  damages to any person suffering injury while he is employed by such carrier… resulting

5  in whole or in part from the negligence of any of the officers, agents, or employees of

6  such carrier[.]" 45 U.S.C. § 51. The statute was primarily enacted by Congress to address

7  the inherent risks of working on railroads and the injuries and accidents occurring thereon.

8  *See Urie v. Thompson*, 337 U.S. 163, 181 (1949). What constitutes negligence for

9  purposes of FELA turns upon common-law principles. *Consolidated Rail Corp. v.*

10  *Gottshall*, 512 U.S. 532, 543-44 (1994). However, "special features of this statutory

11  negligence action. . . make it significantly different from the ordinary common-law

12  negligence action." *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 509-10 (1957). The

13  FELA causation standard is different from the usual proximate cause standard, in that the

14  proper standard is whether Defendant's "negligence played any part—no matter how

15  small—in bringing about the plaintiff's injury." *CSX Transp., Inc. v. McBride*, 564 U.S. 685,

16  698-99 (2011).

17              **1.**    **Walkway Safety[6]**

18      Defendant argues that Plaintiff lacks sufficient evidence to prove that the walkway

19  he was working in caused or contributed to his injury because Plaintiff cannot provide

20  evidence that debris or any other hazardous condition existed in the walkway the night

21  Plaintiff was injured. (ECF No. 76 at 19.) Specifically, Defendant argues that Plaintiff's

22  claim must fail because Plaintiff never saw what he stepped on, and he can only speculate

23

24      [5]Defendant's Motions to Exclude seek to exclude testimony from Pagels and

25  Ogden for the purposes of Defendant's Motion and at trial. The Court's does not consider testimony from either expert in its analysis of Defendant's Motion.

26      [6]The parties agree, after learning during discovery that the track Plaintiff worked

27  on was placed in revenue service prior to 2001 thus does not fall under Nevada's railroad walkway regulations, NAC §§ 705.160, 705.171, that judgment in favor of Defendant is

28  appropriate as to Plaintiff's strict liability claim. (ECF Nos. 76-1 at 25; 91 at 15.) The Court will grant summary judgment in favor of Defendant as to this claim.

as to what he might have stepped on. (*Id.* at 20.) Defendant also argues that it has implemented rules and practices regarding safety, so it has exercised reasonable care. (*Id.* at 22.) The Court disagrees.

On a motion for summary judgment, the moving party's burden is discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Defendant has failed to discharge its burden. Plaintiff testified in his deposition that he stepped on "something protruding up." (ECF No. 76-4 at 39.) Plaintiff proffered deposition testimony from Schulthies that scrap metal and debris on the ground in the area has "always been an issue." (ECF No. 91 at 7.) Plaintiff cites deposition testimony from Ray Breedlove, Defendant's former superintendent of train operations, that scrap metal and debris would accumulate on the ground and Western Metals would overload cars with scrap metal. (ECF No 91-9 at 61-62.) Plaintiff has presented evidence sufficient to create a genuine issue of material fact as to whether the condition of the walkway contributed to Plaintiff's injury.

The parties cite a factually similar case, *Harris v. Illinois Cent. R. Co.*, 58 F.3d 1140 (6th Cir. 1995), wherein the defendant appealed judgment on a FELA verdict for a railroad worker who was injured by stepping on debris in the walkway. There, as here, Plaintiff had presented ample evidence from which a jury could infer that Defendant knew that debris fell from train cars and was lax about cleaning up debris. *Id.* at 1143. Plaintiff need not proffer evidence of a specific item of debris for a reasonable jury to conclude that Defendant was negligent in keeping the walkway free of debris.

Citing to *Harris*, Defendant further claims that it is entitled to summary judgment because Plaintiff has not provided evidence that the railroad had notice of hazardous conditions where Plaintiff was working. Defendant argues, "[t]he appellate court's decision in *Harris* is inapposite because…. [i]t was known that debris would fall from cars, yet several witnesses testified the yard was only cleaned up 'about once a year,' if ever." (ECF No. 96 at 8, citing *Harris*, 58 F.3d at 1143.) Defendant mischaracterizes *Harris*. The *Harris* court noted that "the accounts of the witnesses varied as to whether the debris was

4

removed with any regularity," and only a single witness testified that the yard was cleaned up "about once a year." The *Harris* court considered testimony from the plaintiff and witnesses that there "was always debris in the yard[.]" *Harris*, 58 F.3d at 1143. Defendant's attempt to distinguish the case fails.

The Court finds that Defendant is not entitled to summary judgment as to Plaintiff's walkway conditions claim because it has not shown the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323.

### 2.    Lighting Conditions

Defendant argues that it is entitled to summary judgment because Plaintiff cannot support his claim that the lighting was inadequate. (ECF No. 76-1 at 27.) Defendant claims that Plaintiff cannot show that Defendant failed to provide adequate lighting because Plaintiff incorrectly testified in his deposition that there was no overhead lighting, there were lights on buildings nearby, and Plaintiff had a functioning headlamp. (*Id.*) The Court again disagrees.

As an initial matter, the Court notes that even if there was some overhead lighting, there were lights on buildings nearby, and Plaintiff had a headlamp, a jury may still reasonably find that the lighting may have been inadequate. Moreover, contrary to Defendant's assertion that Plaintiff's only evidence as to lighting conditions is Plaintiff's own deposition testimony, Plaintiff offers evidence in the form of deposition testimony from one of Defendant's managers, John McCafferty, that the incident report photos were taken the day after the incident because there would not have been enough visibility otherwise (ECF No. 91-19 at 4-5), testimony from Schulthies that at least some of the overhead lights Defendant claims illuminate the area were installed after Plaintiff's injury (ECF No. 91-4 at 37-39), and three co-worker affidavits as to the poor lighting in the area (ECF No. 91 at 6). Viewing this evidence in the light most favorable to Plaintiff as the

1    nonmoving party and drawing all reasonable inferences in his favor, the rational jury could

2    reasonably agree with Plaintiff's inadequate lighting theory.[7]

3              **3.    GOOME Rule**

4              Defendant argues that it is entitled to summary judgment on Plaintiff's theory that

5    Defendant was negligent for re-allowing getting on and off moving equipment ("GOOME")

6    in 2019. Specifically, Defendant argues that Plaintiff's expert witness testimony from

7    Brandon Ogden should be disregarded, and Plaintiff's remaining evidence that the

8    practice is unsafe is insufficient. (ECF No. 76 at 30.) As discussed above, the Court will

9    address this argument without considering Ogden's testimony.

10             In the FELA context, evidence of alternatives often has a significant bearing on

11   what is reasonable. *Rodriguez v. Delray Connecting R. R.*, 473 F.2d 819, 821 (6th Cir.

12   1973) (rejecting the railroad's argument that evidence of a different available tool was

13   irrelevant); *see also Stone v. New York, C., & St. L. R. Co.*, 344 U.S. 407, 409 (1953)

14   (noting that alternative methods of removing ties may be considered when determining

15   whether the defendant was negligent). Plaintiff has introduced evidence of an

16   alternative—getting off standing equipment instead of moving equipment. (ECF No. 91 at

17   8-11.) Plaintiff offers a 1990 study from Defendant's Risk Management department that

18   shows a reduction in GOOME injuries in tandem with no increased injuries from getting

19   on and off standing equipment, after Defendant banned GOOME in the late 1980s. (ECF

20   No. 91 at 9.) Plaintiff proffers evidence showing that Defendant re-permitted GOOME and

21   then banned it again in 2001 in Defendant's company rulebook. (*Id.* at 10.) Defendant's

22   rulebook labeled its prohibition on GOOME as a "Critical Rule" for which "[n]oncompliance

23   could potentially result in serious or life-threatening consequences for employees." (ECF

24   No. 91-21 at 3.)

25

26

27             [7]On summary judgment, "the evidence of the non-movant is to be believed, and all
     justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477
28   U.S. 242, 255 (1986).

1    Considering Plaintiff's evidence, the Court does not agree with Defendant that

2    Plaintiff's evidence is insufficient. Plaintiff has provided evidence that Defendant had

3    previously banned GOOME twice due to safety concerns, and that when banned,

4    GOOME injuries decreased while standing injuries did not. Defendant counters that the

5    numbers of injuries getting off standing equipment did not increase after a prohibition of

6    GOOME does not demonstrate it is a safer alternative, and that Plaintiff has no proof that

7    GOOME presents an unreasonable risk of injury because it was once prohibited out of

8    safety concerns. (ECF No. 96 at 12.) Viewing all facts in a light more favorable to the

9    nonmoving party and drawing all reasonable inferences, a reasonable jury conclude that

10   Defendant was negligent in adopting GOOME when it knew a safer alternative existed.

11   *See Anderson*, 477 U.S. at 255.

12   In sum, the Court finds that Defendant is not entitled to summary judgment.

13   Genuine issues of material facts exist as to Plaintiff's claims regarding walkway

14   conditions, lighting conditions, and Defendant's re-adoption of GOOME to preclude

15   summary judgment.

16   **B.    Motions to Exclude**

17   The Court now turns to Defendant's Motions to Exclude. Defendant argues that

18   testimony of both Pagels and Ogden—Plaintiff's railway safety experts—should be

19   excluded for the purposes of its motion for summary judgment and at trial. (ECF Nos. 77,

20   81.)

21   In *Daubert*, the Supreme Court held that under Federal Rule of Evidence 702,

22   scientific testimony must be reliable and relevant to be admissible. *Daubert v. Merrell Dow*

23   *Pharms., Inc.*, 509 U.S. 579, 589 (1993). The Court clarified in *Kumho Tire* that *Daubert's*

24   principles also apply to technical and specialized knowledge. *Kumho Tire Co., Ltd. v.*

25   *Carmichael*, 526 U.S. 137, 141 (1999). The trial court has "considerable leeway" in

26   deciding how to determine the reliability of an expert's testimony and whether the

27   testimony is in fact reliable. *Id*. at 152.

28

The Ninth Circuit has emphasized that "Rule 702 is applied consistent with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony." *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir.), *opinion amended on denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001) (citations and internal quotation marks omitted). "An expert witness—unlike other witnesses—is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation, so long as the expert's opinion has a reliable basis in the knowledge and experience of his discipline." *Id.* (citations and internal quotation marks omitted).

Defendant's arguments regarding Pagels' testimony can largely be summarized as follows: Pagels relied heavily, or solely, upon Plaintiff's deposition testimony, therefore his opinions are not reliable and should be limited or excluded. Specifically, Defendant argues that Pagels has no proper basis to opine as to unsafe footing conditions because he relies upon Plaintiff's statement that he stepped on something (ECF No. 77-1 at 9); his opinion as to Defendant's awareness of unsafe footing conditions is improper because it is solely based on the conductor's statement and Plaintiff's deposition (*id.* at 8); and his opinion that metal debris are a hazard are unsupported because he did no scientific analysis (*id.*).

Pagels is a railroad safety consultant with 45 years of railroad industry experience, including eight years and five months as a Track Safety Inspector and Specialist with the Federal Railroad Administration ("FRA"). (ECF No. 78-2 at 3.) Pagels reviewed case materials, including but not limited to Plaintiff's deposition testimony, and other reference materials including relevant federal regulations, Defendant's handbooks, and portions of the FRA's Track Safety Standards Compliance Manual. (*Id.* at 6-7.) Here, contrary to Defendant's assertion that Pagels has simply taken Plaintiff's testimony and combined it with anecdotes, the Court finds it more likely than not that Pagels' testimony has a reliable basis in the knowledge and experience of his discipline. *Kumho*, 526 U.S. at 149; Fed. R. Evid. 702. Accordingly, Pagels is permitted to opine as to these issues even if he did not

8

1  personally see the railway in November 2019 and has based his opinions on Plaintiff's

2  testimony, in addition to his specialized knowledge and experience in railway safety.

3      Defendant raises similar arguments as to Ogden. Specifically, Defendant argues

4  that Ogden's opinion that Defendant left debris in the walkway is inadmissible because it

5  is based only on Plaintiff's testimony (ECF No. 81-8 at 8); his opinion as to lighting

6  conditions should be excluded because it is based on Plaintiff's testimony and he didn't

7  conduct scientific analysis (*id.* at 10-11); his opinion as to Precision Scheduled

8  Railroading ("PSR") is baseless and inadmissible (*id.* at 15); and his opinion that

9  Defendant failed to meet the industry standard of care should be excluded as an improper

10  legal opinion (*id.* at 16).

11      As above, the Court is not persuaded by Defendant's argument that an expert's

12  opinion is inadmissible because it is based on Plaintiff's testimony. An expert has wide

13  latitude to offer opinions, and opinions need not be based on firsthand observation to be

14  sufficiently reliable. Ogden has 17 years of experience in the industry as a certified

15  switchman/conductor or railroad operations manager with BNSF and as a railroad

16  operations consultant. (ECF No. 82-2 at 31-32.) He has worked as an expert witness and

17  consultant in railroad operations since 2016. (*Id.*) In authoring his report, Ogden reviewed

18  case materials, Defendant's materials including safety rules and operating rules,

19  materials from Defendant and other railroads, and reports and studies from the FRA and

20  other organizations. (*Id.* at 4-5.) The Court finds that Ogden's testimony has a basis in

21  this training and experience. Accordingly, the Court does not find convincing Defendant's

22  arguments as to walkway conditions, lighting conditions, and Defendant's decision to

23  adopt PSR.

24      Defendant additionally argues that Ogden's opinion as to GOOME should be

25  excluded because he did not conduct scientific analysis and did not use Defendant's

26  recent injury statistics. (ECF No. 81-1 at 12-14). Defendant suggests Mr. Ogden "*could*,

27  in theory, testify that the practice of getting on moving equipment presents a risk of injury

28  if such a claim were supported by facts and data, here, Ogden offers only unsupported

1   claims that the practice is inherently unsafe, without any citation to data or literature."

2   (ECF No. 81-1 at 14.) Plaintiff counters that Ogden's testimony is based on "over one-

3   hundred documents from [Ogden's] GOOME reference library, including rules, internal

4   memoranda, ergonomic studies, statistical analysis and videos from various freight

5   railroads including Union Pacific," and argues that to the extent Defendant claims that

6   Plaintiff's expert should examined Defendant's more recent statistics, that is a jury

7   question.  (ECF No. 90 at 10.) The Court agrees with Plaintiff.

8       The Court finds that Pagels' and Ogden's expert opinions are sufficiently reliable

9   and based in the knowledge and experience of their disciplines and would be helpful to a

10  jury. It would therefore be improper for the Court to exclude their testimony on Defendant's

11  motion. *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) ("The

12  Court is a gatekeeper, not a fact finder") (quoting *Primiano v. Cook*, 598 F.3d 558, 568

13  (9th Cir. 2010)). To the extent that Defendant argues that the expert witnesses relied too

14  heavily upon certain types of evidence—e.g., upon Plaintiff's deposition testimony, or that

15  Ogden should have referenced Defendant's more recent injury statistics—Defendant may

16  cross-examine these witnesses and the jury will assess the credibility and weight of their

17  testimony. *See id*. The Court thus denies Defendant's Motions to Exclude.

18  **IV.    CONCLUSION**

19      The Court notes that the parties made several arguments and cited to several

20  cases not discussed above. The Court has reviewed these arguments and cases and

21  determines that they do not warrant discussion as they do not affect the outcome of the

22  motions before the Court.

23      It is therefore ordered that Defendant's motion for summary judgment (ECF No.

24  76) is denied except as to Plaintiff's FELA strict liability claim. The Court grants summary

25  judgment in favor of Defendant on that claim.

26      It is further ordered that Defendant's motion to exclude expert testimony of Alan

27  Pagels (ECF No. 77) is denied.

28

1     It is further ordered that Defendant's motion to exclude expert testimony of

2  Brandon L. Ogden (ECF No. 81) is denied.

3     It is further ordered that this case is referred to the Magistrate Judge for a

4  settlement conference. The deadline for the parties to file the joint proposed pretrial order

5  is 30 days from the date of the settlement conference.

6     DATED THIS 28th Day of August 2025.

7

8

9  _____

10  MIRANDA M. DU
   UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28